**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Respondent,

v.                               No. CV 10-1261 BB/GBW
                                    CR 08-1412 BB

SILVESTER REYES-FILICIANO,

        Petitioner.

**PROPOSED FINDINGS OF FACT
AND RECOMMENDATION FOR DISPOSITION**

This matter is before the Court upon the Petition of Silvester Reyes-Filiciano ("Petitioner") for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255.  *Doc. 102*.[1] Having considered the submissions of both parties, extant case law, and the record,[2] the undersigned recommends that the claims raised in the instant Petition for the Writ of Habeas Corpus ("Petition") be denied and dismissed.

**I.    BACKGROUND**

The following derives from the "Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" ("Response") filed by the United States of America

---

[1]    Unless otherwise noted, citations to the docket will correspond to Petitioner's underlying criminal case, *United States v. Silverster Reyes-Feliciano, et. al.*, No. CR-08-1412.

[2]    The record includes both the instant cause number and Petitioner's underlying criminal case.

("Respondent").  *Doc. 109* at 1-3.

Between May 21, 2008, and June 4, 2008, Petitioner and two co-conspirators negotiated with an undercover federal agent ("UC") who sought the purchase of approximately four pounds of methamphetamine.  On June 4, 2008, after multiple conversations and arranging numerous meetings to purchase the four pounds of methamphetamine, the UC met several of the conspirators at a Wal-Mart parking lot on the west side of Albuquerque, New Mexico, to finalize the purchase.

At the scene, the UC demanded that Petitioner and a co-conspirator show him the methamphetamine before the purchase could take place.  Petitioner motioned toward the truck's rear seat, stating in Spanish that "it is here."  Finding this attestation insufficient, the UC again directed Petitioner to show him the methamphetamine.  In response, Petitioner opened the third rear door of the extended cab portion of the truck, pulled a plastic shopping bag from underneath the seat, and placed it on the backseat floorboard. Petitioner then displayed four cylindrical packages wrapped in clear green plastic wrap.

While this was occurring, the UC observed a black, plastic gun box next to the shopping bag.  The UC then signaled his fellow agents, who were observing from concealed positions.  Petitioner and a co-conspirator were arrested at the scene.  In sum, agents seized approximately 2,601.2 gross grams of methamphetamine from the truck occupied by the Petitioner and his co-conspirator.  Moreover, agents seized the black gun box from the vehicle, which was later found to contain a Cobray MAC-II 9 millimeter

handgun with two magazines and 19 bullets.

## II.    PROCEDURAL HISTORY

On June 24, 2008, a federal grand jury returned a three-count indictment charging Petitioner with the following: (1) Conspiracy to Possess With Intent to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. § 846; (2) Possession With Intent to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A); and (3) Carrying a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2. *Doc. 18.* Having given a statement to law enforcement following his arrest, Petitioner moved to suppress the  statement during the pendency of his prosecution, but the motion was denied. *Doc. 34, 49.*

On July 20, 2009 - the day his jury trial was to begin - Petitioner pleaded guilty pursuant to a plea agreement with the United States of America ("Respondent"). *Docs. 73, 74.* As part of that plea agreement, Petitioner acceded to the accuracy of the "Factual Basis" contained within his plea agreement. *Doc. 73* at 3-5.  That Factual Basis reflected the account of events contained *supra*. *See id.*

On January 21, 2010, the Court sentenced Petitioner to an aggregate of 322 months incarceration. *Doc. 87.* As to Counts One and Two, the Court imposed a sentence of 262 months incarceration to run concurrently, and as to Count Three, the court sentenced Petitioner to a sentence of sixty (60) months, which was imposed consecutive to the 262

3

month sentence pursuant to statute.  *Id.*  Following his term of incarceration, the Court also

required Petitioner to serve a five-year term of supervised release on each count; these

terms were to run concurrent to one another.  *Id.*

Petitioner timely filed the instant Petition on December 29, 2010.  *Doc. 102.*

Alongside his Petition, Petitioner also submitted a "Memorandum of Law in Support of

Petitioner['s] Application for Post-Conviction Relief Under 28 U.S.C. § 2255"

("Memorandum").  *Doc. 103.*  Following this Court's Order, Respondent filed its Response

on March 1, 2011.  *Doc. 109.*

## III.   ISSUES PRESENTED

Notwithstanding Petitioner's articulation and ordering of the issues, because he

proceeds *pro se*, this Court applies its own liberal construction to ensure all competent

contests receive judicial examination.  *See Brace v. United States*, 634 F.3d 1167, 1169 (10th

Cir. 2011).  Thus, having examined both the instant Petition and corollary Memorandum,

I construe Petitioner as advancing four grounds of collateral attack upon his conviction and

sentence.[3]  First, Petitioner argues that he received ineffective assistance of counsel because

---

[3]      Although never advanced it as an individuated ground in either his Petition
or Memorandum, Petitioner states that he can "show that he is 'actually innocent'" of the
counts alleged in the indictment.  *Doc. 103* at 1.  Nevertheless, nowhere in any of the
pleadings does Petitioner support this bald assertion or substantiate an argument for actual
innocence as to the drug trafficking charges.  To the contrary, Petitioner's own recitation
of the facts confirms that he is guilty of both drug trafficking charges.  *Id.* at 1-7.
Furthermore, Petitioner announced in open court that he made no claim to being innocent
of any of the charges against him.  Pet'r's Plea Hr'g Tr. 11:17-19, July 20, 2009.  Because

"counsel failed to notify the Court that the Petitioner had a limited ability to read and understand English and refused to request an interpreter."  *Doc. 102* at 4;[4] *see also Doc. 103* at 11-12.  Second, Petitioner claims that he received ineffective assistance of counsel because his attorney tricked him into signing the plea agreement.  *Doc. 103* at 17.  Third, Petitioner contends that he was entitled to a mitigating role adjustment in the sentencing calculations.  *Doc. 102* at 5; *Doc. 103* at 13-16.  Finally, Petitioner argues that his firearms conviction lacked a proper factual basis.[5]  *Doc. 103* at 18-22.  For the reasons outlined below, I recommend that all of these claims be denied on the merits.

## IV.   STANDARD OF REVIEW FOR 28 U.S.C. § 2255 PETITIONS

Federal courts apply an exacting standard of review to petitions filed pursuant to 28 U.S.C. § 2255.  Relief may issue under 28 U.S.C. § 2255 only where a court determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was

---

Petitioner's fleeting mention of actual innocence contradicts his own factual account and that contained in the record, this Court finds that his Petition does not raise a separate claim of "actual innocence" to the drug trafficking convictions.  Petitioner does argue his conviction for possession of the firearm was illegal because he did not knowingly possess it.  That claim will be addressed herein .

[4]    References to page numbers in the instant Petition will correspond to the pagination assigned by the District of New Mexico's Electronic Case Filing System.

[5]    The Petition organizes this claim under an "ineffective assistance of counsel" banner.  *Doc. 102* at 7; *Doc. 103* at 17.  However, the argument is not directed at his counsel's actions or inactions.  Instead, it focuses on Petitioner's belief that he was not guilty of that crime.

not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.   Furthermore, the reviewing court presumes that the proceedings which led to a petitioner's conviction were correct. *See Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989).  Thus, "[s]ection 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (citation omitted).  Fundamentally, to prevail in an action brought under 28 U.S.C. § 2255, a petitioner must show a defect in the proceedings which resulted in a "complete miscarriage of justice."  *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

The court must hold an evidentiary hearing on a section 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995). Conversely, however, the court may dispense with an evidentiary hearing when the petitioner's factual allegations are "contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact."  *United States v. Caraway*, 2010 WL 3721689 at *2 (D. Kan. Sept. 15, 2010) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of

counsel claims which are merely conclusory in nature and bereft of supporting factual averments).  The burden is with the petitioner to allege facts which, if proven, would entitle him or her to relief.  *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995).  To meet that burden, a petitioner's "allegations must be specific and particularized, not general or conclusory."  *Id.*

## V.   ANALYSIS

As outlined above, Petitioner advances four collateral attacks on his conviction and sentence.  The deficiencies of each claim are discussed *seriatim*.

### A.   Petitioner's Two Claims of Ineffective Assistance of Counsel

Petitioner's first two claims allege that trial counsel provided ineffective assistance. The first specifically avers that "[P]etitioner is an un-documented [sic] alien from Sinaloa, Mexico[,] and has a minimal command of the [E]nglish language."  *Doc. 103* at 11.  As such, he claims he was unable to understand the complexity of the legal issues and the "United States legal system as a whole."  *Id.*  Correspondingly, Petitioner represents that he "requested that an interpreter be provided to him[,] or that[] the proceedings be read to him in [S]panish."  *Id.*  Yet, despite his requests, Petitioner recounts that "trial counsel "dropped the ball and let the court continue with the proceedings minus an interpreter for [Petitioner] which ultimately violated his due process rights."  *Id.*  By his account, "[t]he court itself admonished [Petitioner] in stating that the proceedings would be conducted in

7

[E]nglish and that at no time was the offer of an interpreter made to defense or to [Petitioner]." *Id.* at 12.

Additionally, Petitioner advances the charge that trial counsel duped him into signing a plea agreement. As he recollects the matter, trial counsel tricked him into singing "papers that he thought was an application for bond when in fact it was a plea agreement that stipulated the sentence he received." *Id.* at 17. Further, he states that he was "more or less coerced into signing a document that he knew neither what it said or was." As a consequence, he prays this Court "remand on the issue." *Id.*

### 1.   Standard for ineffective assistance of counsel

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted). "Where, as here, a defendant is represented by counsel during the plea process and enters a plea upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

As with all other ineffective assistance claims, a petitioner alleging that ineffective assistance led to an involuntary plea must satisfy a two-prong test. *Id.* at 57 (*citing Strickland v. Washington*, 466 U.S. 668 (1984)). First, the petitioner must establish that

counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687.  To do this, a petitioner must show that counsel's performance was outside the wide range of professionally competent assistance.  *Id.* at 690.  Upon collateral review, counsel is presumed to have acted within the wide range of reasonable professional assistance.  *Id.* at 689.  Accordingly, the petitioner bears the burden of overcoming this presumption. *United States v. Voigt*, 877 F.2d 1465, 1468 (10th Cir. 1989) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

Second, a petitioner must establish a reasonable probability that absent counsel's objectively unreasonable representation, the outcome of the proceeding would have been different.  *Id.* at 694.  In the context of a guilty plea, a petitioner cannot satisfy the second *Strickland* prong unless he establishes a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 59.

### a.   Neither of Petitioner's claims of ineffective assistance satisfy the first *Strickland* prerequisite

As a threshold matter, Petitioner has failed to establish that trial counsel's representation fell below an objective standard of reasonableness.  Whether through the outright falsity of his first argument or the utter lack of substantiation for his second, Petitioner's attestations fail to demonstrate that counsel acted unreasonably, and thereby, ineffectively.

### i.   Interpreters were provided to Petitioner

Petitioner's first ground alleges that trial counsel failed to secure an interpreter for

Petitioner despite his inability to understand English.  *Doc. 103* at 11.  Unfortunately for

Petitioner, the record contravenes this claim.  Indeed, the record reveals that "M. Kagan"

interpreted for Petitioner at his initial appearance on June 5, 2008.  *Doc. 2.*  Similarly, at

Petitioner's preliminary and detention hearing held three days later, "B. Korp-Edwards"

translated the proceedings.  *Doc. 10.*  For his arraignment of July 2, 2008, "M. Kagan" again

interpreted for Petitioner.  *Doc. 22.*  Later, at his plea hearing of July 20, 2009, the hearing's

transcript memorializes that Petitioner was "sworn and testified through the Court

Interpreter."  Pet'r's Plea Hr'g Tr. 3:7-9, July 20, 2009.  In fact, at the plea hearing, the Court

asked Petitioner, "Are you able to read and speak and understand English, or do you

prefer to continue with the interpreter?"  *Id.* at 3:23-25.  When Petitioner responded that he

preferred an interpreter, the Court said, "All right.  I will continue with the interpreter."

*Id.* at 4:1-3.[6]

Finally, at Petitioner's sentencing hearing which was also interpreted for Petitioner,[7]

the Court asked defense counsel whether he had "reviewed the presentence report in

---

[6]     This exchange exposes the falsity of Petitioner's claim that "[t]he court itself admonished [Petitioner] in stating that the proceedings would be conducted in [E]nglish and that at no time was the offer of an interpreter made to defense or to [Petitioner]."  *Doc. 103* at 12.

[7]     *See* Pet'r's Sentencing Hr'g Tr. 7:19-20 (interpreter requests repetition).

Spanish with Petitioner."  Pet'r's Sentencing Hr'g Tr. 2:22-23, January 21, 2010.  Counsel

announced he had done so with the use of a "Spanish-speaking interpreter" and that the

report "was read in its entirety to [Petitioner] in his native language of Spanish." *Id.* at 3:1-

3.  Despite having the opportunity to do so, at no time did Petitioner challenge trial

counsel's representation to the Court.

    Therefore, in light of the overwhelming evidence contradicting this claim, this Court

concurs with Respondent's branding of this ground as "patently false." *Doc. 109* at 4.

Defense counsel acted reasonably in securing interpretation services for Petitioner both in

and out of the courtroom, and consequently, cannot be said to have provided ineffective

assistance by not having done so.  The record forecloses this argument as well as this claim.

### ii.     Trial counsel did not trick Petitioner into signing his plea agreement

    Petitioner's second claim of ineffective assistance of counsel is similarly contravened

by the record.  Although Petitioner contends that he was tricked into signing his plea

agreement by trial counsel, the transcript of his plea hearing reveals otherwise. *See United

States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988) (holding that a defendant's statements

at a plea hearing should be regarded as conclusive as to truth and accuracy in the absence

of a believable, valid reason justifying a departure from the apparent truth of those

statements) (citations omitted).

    At Petitioner's plea hearing of July 20, 2009, which occurred in lieu of the jury trial

11

set to begin that day, the Court asked Petitioner, through the interpreter, if he understood what was happening at the hearing.  Pet'r's Plea Hr'g Tr. 4:7-8.  Petitioner replied "[y]es." *Id.* at 4:9.  Next, the Court asked Petitioner if had been given "adequate time to discuss [his] case fully with [trial counsel]."  *Id.* at 4:16-18.  Petitioner responded in the affirmative.  *Id.* at 4:19.   Shortly  thereafter,  Petitioner  confirmed  his  satisfaction  with  trial  counsel's representation and his understanding of the charges against him.  *Id.* at 4:20-5:19.  When asked if anyone had threatened him or forced him to plead guilty, Petitioner said "[n]o." *Id.* at 7:21-23.  Similarly, when asked if any person had made promises to him other that those contained in the plea agreement, Petitioner answered in the negative.  *Id.* at 7:24-8:1.

Following his plea of guilty to all counts, the Court asked Petitioner if the plea agreement had been read to him in Spanish or explained to him.  *Id.* at 11:20-22.  Petitioner answered, "[y]es, in Spanish."  *Id.* at 12:1.  A brief review of Petitioner's plea agreement confirms that any claim of confusion between it and a bond application is beyond belief. *See Doc. 73.*  Furthermore, when asked by the Court if he made "any claim" to being "innocent of any of these charges," Petitioner stated "no" in reply.  Pet'r's Plea Hr'g Tr. 11:17-19.  Given these statements, made in open court, Petitioner's claim of being fooled into pleading guilty strains credulity.   Moreover, considering these statements in the context of Petitioner signing his plea agreement and entering his guilty plea on the morning he was to face his jury trial, the claim that he thought he was signing a bond

application becomes that much more unbelievable.  In view of the contradictions between Petitioner's factual allegations and the record as well as their inherent incredibility, there is not even a need for an evidentiary hearing on these matters.  *Caraway*, 2010 WL 3721689 at *2.

Consequently, I find that Petitioner has failed to establish that his counsel coerced him into signing a plea agreement and entering a guilty plea he otherwise would not have signed.  To the contrary, Petitioner's sworn statements convince me that he entered his guilty plea voluntarily and freely.  *See Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (holding that a defendant's sworn testimony at a plea hearing establishes that the defendant knowingly and voluntarily entered a guilty plea).  Accordingly, this Court finds that defense counsel's actions did not fall below an objective standard of reasonableness and that Petitioner has failed to satisfy the first *Strickland* prerequisite.

### b.   Petitioner has failed to establish that he would not have pled guilty but for his counsel's errors

As discussed above, in the context of a guilty plea, a petitioner cannot satisfy the second *Strickland* prong of prejudice unless he establishes a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 59.  In the instant case, Petitioner has failed to even allege that he would have insisted on going to trial but for the supposed trick played on him by trial counsel.  In fact, even at his sentencing hearing where Petitioner expressed displeasure

13

with his attorney and the sentence that was likely to be imposed, Petitioner never expressed a desire to withdraw his guilty plea nor did he say that he would not have pled guilty but for his attorney's actions.  Pet'r's Sentencing Hr'g Tr. 3:16 - 8:22.  Particularly given the substantial evidence supporting the voluntariness of Petitioner's guilty plea, the failure make this assertion in his petition is independently fatal to his request for habeas relief.

Because the record conclusively shows that Petitioner is entitled to no relief due to the absence of either of the *Strickland* prerequisites for his ineffective assistance claims, I recommend that these claims be denied.

### B.    Petitioner's Minimal Role Challenge

As the third ground for modifying his sentence, Petitioner attacks the failure of the sentencing court to award him a four-point sentencing reduction based on his minimal participation in the drug trafficking conspiracy giving rise to his conviction.  *Doc. 103* at 13.  By his account, he "had no say as to the price of methamphetamine, he had no say in where or when it was to be delivered, [and] he had no say as to anything in the operation."  *Id.*  Further, Petitioner claims "he was not involved in any of the planning or the production of the drugs themselves."  *Id.*  Petitioner claims that he "did not appear in the conspiracy until the date of delivery to the agent and as to that, he was just a passanger [sic] in the vehicle."  *Id.*  Thus, believing that he acted as nothing more than a courier, Petitioner

contends "he should receive at the least the 'minimal participant'" adjustment provided for in the United States Sentencing Guidelines.  *Id.* at 16.

Respondent counters that Petitioner's actions "do not meet the criteria for [a] mitigating role reduction."  *Doc. 109* at 6 (citation omitted).  Indeed, Respondent argues that Petitioner "was an active participant in the transfer of [] methamphetamine to [an undercover] agent."  *Id.*  Further, according to the Presentence Report ("PSR"), "when a co-defendant told [Petitioner] to show the methamphetamine to the [undercover agent], [Petitioner] went directly to the third rear door of the extended cab portion of the truck, pulled a plastic shopping bag from underneath the seat and placed it on the backseat floorboard, where he pulled it open to reveal the drugs."  *Id.* (citing PSR ¶ 25).  Respondent cites again to the PSR for the proposition that Petitioner "was able to immediately produce [the methamphetamine], showing that he knew where it was."  *Id.* (citing PSR ¶ 25).  It was at this point, as recited by the PSR, that "the [undercover agent] observed a black plastic gun box next to the plastic bag."  *Id.* (citing PSR ¶ 25).  Based upon this series of events, Respondent avers that Petitioner "must have been fully aware that the weapon was hidden in the truck with the methamphetamine, as they were right next to each other."  *Id.*  As final support for its argument, Respondent cites to the U.S. Probation Officer's statement that "neither the case agent nor the government could establish that the defendant played an aggravating role or a mitigating role in the instant offenses."  *Id.* at 7 (citing PSR ¶ 47).

Unfortunately, both parties have failed to recognize the overriding reason why Petitioner should not have received any reduction for mitigating role.  Petitioner qualified as a career offender under U.S.S.G. § 4B1.1.  *See* PSR ¶ 50 (redacted copy attached as Exhibit 1).  Petitioner does not dispute that he falls within this provision.  Under U.S.S.G. § 4B1.1, mitigated role reductions are not available because "the career offender guideline trumps all other offense level adjustments, with the exception of reductions for acceptance of responsibility."  *United States v. Jeppeson*, 333 F.3d 1180, 1184 (10th Cir. 2003) (citations omitted).  Therefore, I recommend that this claim be dismissed on the merits.

## C.   Challenge to Firearms Conviction

Petitioner's fourth claim, despite being detailed under the banner of an ineffective assistance of counsel claim, makes no mention of trial counsel or in any way relates to counsel's conduct in representing Petitioner.  To the contrary, this ground exclusively concerns the "illegality" of Petitioner's firearms conviction under 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2.  In that vein, Petitioner posits that he "was illegally charged with this erronious [sic] violation that enhanced his already illegal sentence by an additional five years."  *Id.* at 18.  According to Petitioner, "he never knew [the firearm] was in the vehicle until the agents discovered it in the truck."  *Id.*  Furthermore, as to the aiding and abetting elements of this charge, he contends that "none of the elements to 'prove' the charge of Aiding and Abetting' can be reached as to [Petitioner's] acts," and as a result, he "asks that

16

this count of conviction also be vacated from his sentence and he be remanded for resentencing minus this consecutive sentence."  *Id.* at 22.[8]

### 1.      Standard of Review

Before a guilty plea can be accepted, Federal Rule of Criminal Procedure 11 requires the district court to determine that a factual basis exists to support the plea.  FED. R. CRIM. P. 11(b)(3) (2010); *United States v. Moran*, 452 F.3d 1167, 1171 (10th Cir. 2006); *United States v. Barker*, 681 F.2d 589, 592 (10th Cir. 1982).  The factual basis must appear in the record and must be sufficiently specific to allow the court to determine if the defendant's conduct was within the ambit of that defined as criminal.  *See United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998) (holding that the district court may look to answers provided by counsel, the government, the presentence report, or any other appropriate means, so long as the factual basis is put on the record) (internal quotation marks and citation omitted).  Relief from pleading guilty to a crime which, based upon the facts in the record, a defendant did not commit, is available under 28 U.S.C. § 2255.  *See United States v. Barnhardt*, 93 F.3d 706, 708 (10th Cir. 1996).  However, a petitioner faces a high hurdle because the district court's acceptance of a guilty plea is a factual finding reviewable under the clearly erroneous standard.  *See id.* at 710.

---

[8]      For reasons unknown to this Court, Respondent failed to address this claim.

2.      Elements of  18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2 - aiding and
        abetting the using and carrying of a firearm in relation to a drug
        trafficking crime

Section 924(c)(1)(A)(i) establishes a mandatory minimum five year sentence of

imprisonment for "any person who, during and in relation to any crime of violence or drug

trafficking crime . . .  uses or carries a firearm."  18 U.S.C. § 924(c)(1)(A)(i) (2006).  The

"carry" prong of section 924(c)(1)(A) has two elements: (1) possession of the weapon

through the exercise of dominion or control; and (2) transportation of the weapon.  *United

States v. Durham*, 139 F.3d 1325, 1335 (10th Cir. 1998).  The Supreme Court has described

section 924(c)'s basic purpose as an effort to combat the "dangerous combination" of

"drugs and guns."  *Smith v. United States*, 508 U.S. 223, 240 (1993).  Consistent with that

purpose, the Court held that the phrase "carries a firearm" in section 924(c) is not limited

to the carrying of firearms on the person, but "applies to a person who knowingly

possesses and conveys firearms in a vehicle, including in the locked glove compartment

or trunk of a car, which the person accompanies."  *Muscarello v. United States*, 524 U.S. 125,

126-27 (1998).

The federal aiding and abetting statute does not create an independent crime.  To

the contrary, 18 U.S.C. § 2 simply abolishes the common law distinction between principals

and accessories.  *See United States v. Cooper*, 375 F.3d 1041, 1049 (10th Cir. 2004); *see also* 18

U.S.C. § 2 (2006).  Thus, aiding and abetting liability allows a jury to hold an aider and

abetter responsible for a substantive offensive to the same extent as a principal, even though his act was not the cause of the substantive harm. *See United States v. Hatatley*, 130 F.3d 1399, 1406 (10th Cir. 1997); *see also United States v. Slater*, 971 F.2d 626, 632 (10th Cir. 1992) ("Acts committed in furtherance of the commission of a crime by another constitute 'abetting.'"). Sheer happenstance, however, is insufficient to render an individual an aider and abetter, as more than mere presence at the scene of the crime is required. *See United States v. Delgado-Uribe*, 363 F.3d 1077, 1084 (10th Cir. 2004); *United States v. Hanson*, 41 F.3d 580, 582 (10th Cir. 1994).

To be liable for aiding and abetting, a defendant must (1) willfully associate himself with the criminal venture, and (2) seek to make the venture succeed through some action of his own. *See United States v. Isaac-Sigala*, 448 F.3d 1206, 1213 (10th Cir. 2006); *United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir .2005). Unlike coconspirator liability, liability as an aider and abetter is not contingent upon a prior "agreement or conspiracy to perform" a criminal act. *United States v. Pursley*, 474 F.3d 757, 769 (10th Cir. 2007). Intentionally aiding, counseling, or assisting another in the commission of a crime is all that is required. *See United States v. Pursley*, 474 F.3d 757, 769 (10th Cir. 2007). Further, one need not participate in an important aspect of a crime to be liable as an aider and abetter; participation of "relatively slight moment" is sufficient. *See Isaac-Sigala*, 448 F.3d at 1213; *United States v. Whitney*, 229 F.3d 1296, 1303 (10th Cir. 2000). In fact, even mere "words or

gestures of encouragement" constitute affirmative acts capable of rendering one liable under this theory. *Whitney*, 229 F.3d at 1303.

> **3.      Under facts in record, acceptance of Petitioner's guilty plea was not clearly erroneous**

Having thoroughly examined Petitioner's Memorandum and extant case law, I find no justification for either vacating his conviction or modifying his sentence for aiding and abetting the carrying of a firearm in relation to a drug trafficking crime.   The facts underlying this finding are clear.

First, as part of his plea agreement, Petitioner admitted to the "Factual Basis" included therein. *Doc. 73* at 3-5.  By doing so, Petitioner specifically confirmed that he "possessed a firearm in violation of 18 U.S.C. § 924(c)(1)(A)." *Id.* at 3.  In addition, Petitioner acknowledged that on the date of his arrest, he and a co-conspirator were to deliver methamphetamine to a UC in exchange for money. *Id.* at 4.  Before departing in the vehicle for the location of the exchange, Petitioner admitted in the plea agreement that his co-conspirator "announced that he was bringing his pistol to the deal." *Id.*   When Petitioner and his co-conspirator arrived at the site of the exchange, Petitioner affirmed that he exited the truck driven by the co-conspirator to show the narcotics to the UC. *Id.*  Then, Petitioner confirmed that as he "retrieved a plastic bag" containing methamphetamine from underneath the seat, the UC "noticed a black plastic box of a type commonly used to store firearms." *Id.*

Later, at his plea hearing, Petitioner made no objection to the factual basis read into the record by the prosecutor.  In part, the prosecutor related to the Court that Petitioner and his co-conspirator met the UC "at a designated point to exchange drugs for cash." Pet'r's Plea Hr'g Tr. 8:15-16.  The prosecutor then recounted that "[f]ollowing a brief conversation with [Petitioner], [the UC] made an arrest signal," and thereafter, the UC "discovered a firearm which was located right next to the drugs."  *Id.* at 8:16-21. Additionally, the prosecutor stated that in post-arrest interviews, the UC learned that all the conspirators, including Petitioner, "conspired to plan and execute the drug deal which was consummated with [the UC] and that [the co-conspirator] announced to the entire group [including Petitioner] that he was bringing his pistol for security to the deal."  *Id.* at 8:22-9:2.  Based upon this recitation of facts, the Court asked Petitioner if, as "to Count III, that you did have access to or carry a firearm in relation to this transaction, combining Counts I and II, do you plead guilty or not guilty to that charge?"  *Id.* at 11:10-13.  In response, Petitioner pleaded "[g]uilty."  *Id.* at 11:16.  When asked by the Court if he made "any claim that [he] was innocent of any of these charges," Petitioner replied "no."  *Id.* at 11:17-19.

Thus, Petitioner admitted, expressly in his plea agreement and tacitly in open court, that he knew his co-conspirator would be bringing a firearm to the drug transaction they had planned.  The record also establishes that the firearm was brought for the purpose of

security during the drug transaction.  Moreover, Petitioner admitted, both in his plea agreement and in open court, that  a gun case containing a Cobray Mac-11 9 millimeter semi-automatic pistol was retrieved from an area in close proximity to the narcotics.  Finally, Petitioner was aware of the location of the narcotics and was the conspirator in charge of directing the UC to their location.  Based upon these facts in the record, it was not clearly erroneous to infer that Petitioner constructively possessed and transported the firearm.  *See e.g. United States v. Speer*, 30 F.3d 605, 612 (5th Cir. 1994) (jury verdict of guilty as to 924(c) charge against driver of vehicle was upheld where driver knew passenger was in possession of firearm for security of drug deal was sufficient to uphold).  Moreover, even if these facts could not support the substantive charge under section 924(c)(1)(A), they clearly fall within the broad sweep of aiding and abetting the carrying of a firearm in relation to a drug trafficking crime.  *See Isaac-Sigala*, 448 F.3d at 1213; *Whitney*, 229 F.3d at 1303; *United States v. Taylor*, 612 F.2d 1272, 1275 (10th Cir. 1980) (holding that mere presence can be enough to support an aiding and abetting conviction if it is intended to and does aid the primary actors) (citation omitted).  Because the acceptance of Petitioner's guilty plea to this crime based upon the facts on the record was not clearly erroneous, I recommend that this claim also be denied on the merits.

## VI.    CONCLUSION

Having reviewed the pleadings and record in this case, I find that a hearing on the instant Petition is not necessary.  The pleadings and record conclusively demonstrate Petitioner is ineligible for relief, and as a consequence, I recommend that his Petition be denied and his case be dismissed with prejudice.

The undersigned **HEREBY RECOMMENDS** that the Petition of Silvester Reyes-Filiciano for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 be **DENIED**, and that his case be **DISMISSED WITH PREJUDICE**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
**GREGORY B. WORMUTH**
**UNITED STATES MAGISTRATE JUDGE**